**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 7, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

    No. 25-2084

ANTHONY A. HERNANDEZ,

    Defendant - Appellant.

_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 1:23-CR-00586-DHU-1)**
_____

Maria Elena Stiteler, Assistant U.S. Attorney (Todd Blanche, Deputy Attorney General, and Ryan Ellison, First Assistant U.S. Attorney, with her on the brief), Albuquerque, New Mexico for Plaintiff-Appellee.

Joel R. Meyers, Law Office of Joel R. Meyers LLC, Santa Fe, New Mexico for Defendant-Appellant.

_____

Before **TYMKOVICH**, **MURPHY**, and **CARSON**, Circuit Judges.
_____

**CARSON**, Circuit Judge.
_____

Congress criminalized assaulting any United States officer or employee or any person assisting such officer or employee in the performance of official duties.  In

doing so, Congress intended to ensure a federal forum for the trial of offenses involving both federal officers and federal functions.

Defendant Anthony A. Hernandez—a federal pretrial detainee in the custody of the United States Marshals Service ("Marshals Service")—assaulted an independent contractor of a privately operated prison that had contracted with the Marshals Service. Defendant faced a trial in federal court for the assault and the jury found him guilty. On appeal, Defendant challenges whether the independent contractor he assaulted was an official victim under the relevant statute. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

The Marshals Service contracts with facilities in New Mexico such as Cibola County Correctional Center ("Cibola") to hold federal pretrial detainees. At the time of the incident, the Marshals Service housed federal pretrial detainees at Cibola, including Defendant Anthony Hernandez.

CoreCivic, a private company, operates Cibola. JTF Consulting and Security International, LLC ("JTF"), had an agreement with CoreCivic to provide security consulting. The contract enumerated a list of services JTF would provide to CoreCivic. This included "consulting services as well as miscellaneous Projects" and a catch-all providing "[s]uch other services as agreed to by the parties." JTF did not have an agreement or contract with the Marshals Service. Because Cibola was short on personnel, the warden asked JTF's employee, J.F., to assist with day-to-day tasks for federal pretrial detainees at the jail, including making rounds.

2

J.F. was conducting rounds with a correctional officer when they discovered an extra mattress in Defendant's cell.  J.F. and the correctional officer arranged for central control to unlock the cell door so they could remove the mattress.  When central control opened the door, Defendant pushed it open and punched J.F. multiple times in the face.  J.F. suffered lacerations, a concussion, and a broken nose that required surgery.

A grand jury indicted Defendant for assaulting J.F. in violation of 18 U.S.C. § 111(a) and (b), which, among other things, subjects a person to federal criminal liability for assaulting another person who was assisting a federal officer while engaged in the performance of official duties.  At trial, Defendant moved to dismiss the case for lack of jurisdiction and an acquittal because he claimed J.F. was not assisting a federal officer in the performance of official duties.  The district court denied the motions, ruling that J.F. could fall within the class of people § 111 protects.  The district court said that J.F.'s presence at Cibola could have been only under the contract that the Marshals Service has with the facility.  The district court explained that the jury needed to make a finding on whether J.F. was assisting federal officers with their official duties at the time of the incident and whether J.F. was working within the scope of his duties.  The district court instructed the jury that it needed to find "[t]he person assaulted was then engaged in the scope of his official duties and not acting independently, and was assisting a federal officer in the performance of the federal officer's official duty . . . ."

3

The jury returned a guilty verdict. The district court sentenced Defendant to forty-seven months' imprisonment. Defendant appealed.

## II.

Defendant raises a single issue: whether the government proved that J.F. was an official victim under 18 U.S.C. § 111. Section 111(a) provides that a person who "forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 . . . while engaged in or on account of the performance of official duties" is subject to criminal liability. 18 U.S.C. § 111(a). Section 1114 protects "any officer or employee of the United States or of any agency in any branch of the United States Government . . . while such officer or employee is engaged in or on account of the performance of official duties, or any person assisting such an officer or employee in the performance of such duties or on account of that assistance . . . ." Id. § 1114(a).

Prior to 1996, Congress listed covered officers and employees in § 1114. But Congress replaced the enumerated list with the general reference to "any officer or employee . . . or any person assisting such an officer . . . ." United States v. Holder, 256 F.3d 959, 963 (10th Cir. 2001) (quoting 18 U.S.C. § 1114). "Congress intended to protect both federal officers and federal functions . . . ." United States v. Feola, 420 U.S. 671, 679 (1975). In doing so, it ensured that trials for offenses involving federal officers would be in a federal forum. Id. at 683–84. As to "official duties," no bright-line test exists to define performance of official duties. Holder, 256 F.3d at 963 (quoting United States v. Hoy, 137 F.3d 726, 729 (2d Cir. 1998)). Rather, we

4

focus on whether the agent is "acting within the scope of what the agent is employed to do." Id. (quoting United States v. Hoffer, 869 F.2d 123, 126 (2d Cir. 1989)). Put another way, we look to "whether the agent is acting within that compass or is engaging in a personal frolic of [his] own." Id. (quoting Hoffer, 869 F.2d at 126). We "interpret liberally and with flexibility the plain meaning of 'while engaged or on account of the performance of official duties . . . .'" Id. at 965. "Each case . . . requires a fact specific analysis . . . ." Id. We treat Defendant's jurisdictional challenge to his prosecution "as a challenge to the sufficiency of the evidence." Id. at 966.

The jury had to decide whether J.F. was present at Cibola "engaged in or on account of" his "official duties" when Defendant assaulted him and whether J.F. was "assisting" the Marshals Service when Defendant assaulted him. Defendant contends that J.F. was not assisting a federal officer in the performance of the federal officer's official duties. Defendant further asserts that J.F. was not a federal officer and the fact that he was a private contractor for CoreCivic mattered. We address both contentions in turn. In doing so, "[w]e review the denial of a motion for judgment of acquittal, and hence the sufficiency of the evidence to support the jury verdict, de novo." United States v. Alexander, 817 F.3d 1205, 1209 (10th Cir. 2016) (quoting United States v. Rodella, 804 F.3d 1317, 1323 (10th Cir. 2015)). In our review, "we view the evidence in the light most favorable to the government to determine whether a rational trier of fact could have found the elements of the offense beyond a reasonable doubt." Id. (quoting Rodella, 804 F.3d at 1323).

5

J.F. was engaging in a federal function at the time of the assault. Indeed, Defendant was conducting security rounds at Cibola County Correctional Center—a facility that the Marshals Service had contracted with to house federal pretrial detainees. What J.F. did during security rounds, from checking on inmates to inspecting cells, he did to assist the Marshals Service. Section 111 applies "to protect both federal officers and federal functions . . . ." Feola, 420 U.S. at 679. Performing rounds and checking on federal pretrial detainees is a federal function— not a personal frolic. And it makes no difference that J.F. assisted a CoreCivic employee with rounds rather than a deputy United States Marshal. The CoreCivic employee was acting pursuant to a contract to assist the Marshals Service. And J.F. had a contract with CoreCivic. For purposes of the statute, that is enough.

In an unpublished decision, we analyzed whether a corrections officer employed by a private corporation who is acting pursuant to a contract to assist the Marshal and whose official duties include housing federal pretrial detainees is covered by Section 111. United States v. Ama, 97 F. App'x 900, 902 (10th Cir. 2004) (unpublished). Citing the Fourth and Fifth Circuits, we said he performed the same duties and functions as a federal officer. Id. (citing United States v. Jacquez-Beltran, 326 F.3d 661 (5th Cir. 2003); United States v. Murphy, 35 F.3d 143 (4th Cir. 1994)). Section 111, therefore, applied.

The same is true in this case. Based upon the evidence, a reasonable jury could have found that J.F. acted in the scope of his official duties, did not act independently, and was assisting the Marshals Service at the time of the assault. This conclusion is consistent with

6

the outcome in several cases we cited in Holder: assaulting an off-duty park ranger enforcing park rules, United States v. Hohman, 825 F.2d 1363 (9th Cir. 1987); assaulting an off-duty DEA officer getting a haircut and overhearing a robbery in process, United States v. Reid, 517 F.2d 953 (2d Cir. 1975); assaulting an IRS agent repossessing a car, United States v. Streich, 759 F.2d 579 (7th Cir. 1985); assaulting a federal judge walking to a federal courthouse on a Sunday evening to research a case, United States v. Boone, 738 F.2d 763 (6th Cir. 1984) (per curiam); assaulting a federal agent detaining a state-charged suspect, United States v. Lopez, 710 F.2d 1071 (5th Cir. 1983); and assaulting an off-duty deputy U.S. Marshal arresting a suspect after coming upon a street fracas, United States v. Hoy, 137 F.3d 726 (2d Cir. 1998).

We have also found the following victims under the statute: a probation officer orally employed by a Marshal to assist in the transportation of a federal prisoner, United States v. Reed, 413 F.2d 338, 341 (10th Cir. 1969); a city police detective "deputized to participate in a federal investigation," United States v. Martin, 163 F.3d 1212, 1215 (10th Cir. 1998); a private citizen, killed while helping a federal employee plot a fence funded and approved by a federal agency, Holder, 256 F.3d at 966–67.

Defendant suggests that this case is different, however, because J.F. contracted with CoreCivic rather than directly with the Marshals Service. But this argument misses the mark. J.F. testified that the warden instructed him to assist in the day-to-day operation of Cibola by conducting rounds. A private security consultant might not normally make rounds with a correctional officer, but J.F.'s contract with CoreCivic required him to perform "[s]uch other services as agreed to by the parties."

7

No authority suggests that the statute does not cover J.F. because he did not have a direct contract with the Marshals Service. On the contrary, § 1114 protects *any person* assisting an officer engaged in his or her official duties. The plain language does not require the victim to have a contractual relationship with the officer the victim assists. As with other victims mentioned above, J.F. could act pursuant to a contract without having a direct contractual relationship with a federal agency. Put simply, the fact that J.F. contracted with, but was not directly employed by CoreCivic makes no difference under § 1114. Rather, we look to whether J.F. assisted a federal officer and whether Defendant assaulted him while he engaged in the performance of his official duties. The evidence, taken in the light most favorable to the government, shows that J.F. assisted the Marshals Service in the care and housing of federal pretrial detainees. Neither the statute nor our case law provides a basis to say J.F. was not a victim under the statute.

AFFIRMED.